IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANDREW POULOS, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No. 13-1056-GMS |
| | ) |
| CITY OF NEW CASTLE, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM

The plaintiff, Andrew Poulos, Jr. ("Poulos"), appears *pro se* and has paid the filing fee. Before the court is the defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and Poulos' opposition thereto. (D.I. 7, 14.)

**I. BACKGROUND**

Poulos alleges the defendants violated his civil rights and has filed this complaint pursuant to 42 U.S.C. § 1983.[1] (D.I. 31.) Poulos was employed as a law enforcement officer for the New Castle City Police Department ("NCCPD") from January 9, 2002 until July 28, 2003. At the pre-employment phase, Poulos signed an authorization for the release of records so that the NCCPD could conduct a background investigation and determine his fitness for a law enforcement position. During Poulos' tenure with the NCCPD, he was the subject of two administrative investigations. When Poulos resigned from the NCCPD, it was agreed that the defendant, the City of New Castle ("the City"), would respond to any inquiry regarding Poulos by providing only his dates of employment absent a signed waiver from Poulos.

---

[1] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

In December 2003, Poulos began federal employment as a civilian law enforcement officer with the Department of the Army at Fort Monmouth, New Jersey, and held a position there until September 2011 when his position was eliminated due to a reduction in manpower. When Poulos began his federal employment, he was subjected to suitability and security clearance investigations and signed an authorization form for the Office of Personnel Management, Federal Investigative Service ("OPM-FIS") to obtain information and documents from Poulos' prior employers. A written request was sent to the defendant Major Kevin McDerby ("McDerby"), chief of police for the NCCPD, who provided the OPM-FIS with a copy of the results of Poulos' last administrative investigation. McDerby was also asked to recommend that Poulos be granted a national security clearance, but he declined to do so. Regardless, Poulos was given a security clearance.

In December 2010, Poulos became the subject of a criminal investigation by the United States Army Criminal Investigation Command ("USACIC") that was related to an intelligence assessment Poulos had conducted. On June 14, 2011, military special agent Brandon Manzo ("Manzo") spoke to Bernard Torre ("Torre") who was one of Poulos' supervisors when he was employed by the NCCPD. Torre acknowledged that there was an incident involving Poulos that resulted in his resignation, but did not release any specific details. Thereafter, the defendant Thomas M. Donlon ("Donlon"), a detective with the NCCPD, made an unsolicited call to Manzo and relayed that he had additional information regarding Poulos' employment with the NCCPD. Conlon and Manzo spoke on June 15, 2011, and Donlon disclosed details of two administrative investigations. Poulos alleges the disclosure of this information violated 11 Del. C. § 9200(c)(11).[2]

---

[2]Poulos cites to § 9200(c)(11), but sets forth the language contained in § 9200(c)(12). Section 9200(c)(12) provides that "[w]henever a law-enforcement officer is under investigation

2

On June 21, 2011, McDerby asked the defendant Lieutenant Adam P. Brams, Sr. ("Brams") if Poulos' files were ready because an investigator from the Army was coming to the NCCPD. Brams indicated that he had Poulos' background file, personnel file, and internal affairs file/notebook ready. Poulos alleges that on June 22, 2011, Donlon released the information to Manzo without Manzo providing written consent from Poulos, a grand jury subpoena, search warrant, or a written request in violation of Department of Justice guidelines, the Americans with Disabilities Act, the Delaware Health Care Privacy Act, the New Castle City Personnel Manual, the Fair Credit Reporting Act, the Family Education Rights and Privacy Act, and 11 Del. C. § 9201.[3] Poulos alleges that during the June 22, 2011 meeting, Donlon revealed confidential information about the administrative investigations.

The federal investigation was closed without the filing of any charges, either criminally or administratively. However, Manzo's investigative report contained all of the confidential information provided him by employees of the NCCPD and it was disseminated to numerous top level management officials of agencies within the U.S. Department of Defense and the U.S. Department of Justice. Thereafter, on June 1, 2012, Poulos mailed a notice of intent to file a civil suit to the City and McDerby. Poulos alleges that once they received the notice of intent to

---

or is subjected to questioning for any reason which could lead to disciplinary action, demotion or dismissal, the investigation or questioning shall be conducted under the following conditions: . . . All records compiled as a result of any investigation subject to the provisions of this chapter and/or a contractual disciplinary grievance procedure shall be and remain confidential and shall not be released to the public.

[3]Section 9201 provides that "[n]o law-enforcement agency shall insert any adverse material into the file of any officer except the file of the internal investigation or the intelligence division unless the officer has had an opportunity to review, sign, receive a copy of and comment in writing on the adverse material."

3

sue, Donlon and the defendant, detective Richard P. McCabe ("McCabe"), began investigating Poulos' background subsequent to the time he left his employment with the NCCPD. Poulos alleges the investigation was performed while the defendants were on-duty as law enforcement officers with the City and with the direct knowledge of McDerby.

On January 24, 2013, Poulos made a request through the Delaware Freedom of Information Act ("FOIA") for copies of his own internal affairs files maintained by the City. The request was denied on the grounds of confidentiality under the Delaware Law Enforcement Officer's Bill of Rights. Poulos alleges that McDerby and Brams are trained on the confidentiality provisions of the Delaware Law Enforcement Officer's Bill of Rights.

Count I is raised against McDerby, Brams, and Donlon and alleges violations of Poulos' right to privacy under the Fourteenth Amendment; Count II is raised against McDerby, Brams, and Donlon and alleges § 1983 conspiracy; Count III is raised against the City of New Castle and alleges violation of Poulos' civil rights through the failure to implement appropriate policies, customs, and practices; Count IV is raised against Donlon and alleges defamation under Delaware common law; Counts V and VI are raised against McDerby, Brams, and Donlon and alleges invasion of privacy under Delaware common law; and Count VII is raised against McDerby and alleges false light of privacy under Delaware common law. The defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted and, in the alternative, that the defendants are immune from suit. Poulos opposes the motion.

## II. STANDARDS OF LAW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *See Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (*quoting Iqbal*, 556 U.S. at 678). Though "detailed factual allegations" are not required, a complaint must do more than simply provide "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* (quoting *Twombly*, 550 U.S. at 555). Because Poulos proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).

## III. DISCUSSION

### A. Count I, § 1983 Right to Privacy (against McDerby, Brams, Donlon)

The defendants move for dismissal of Count I on the grounds that the claim sounds in negligence or gross negligence and does not satisfy the publication requirement of a privacy claim. Poulos responds that the actions of the defendants were deliberate and the information was ultimately disseminated to individuals in Poulos' professional community.

The Supreme Court has opined that the "right of privacy" is founded in the Fourteenth Amendment concept of personal liberty. *See Whalen v. Roe*, 429 U.S. 589, 599 n.23 (1977).

One interest protected by the constitutional right is the individual's right to control the nature and extent of information released about that individual. *See Whalen*, 429 U.S. at 599-600; *Nixon v. Administrator of Gen. Servs.*, 433 U.S. 425, 457 (1977) (noting that the right to privacy includes an "'individual interest in avoiding disclosure of personal matters'"); *Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998) (holding that undercover police officers, whose personal files had been released to a violent gang which they had infiltrated and were testifying against, possessed a privacy interest in preserving their lives, personal security, and bodily integrity). "There is no absolute protection against disclosure. Disclosure may be required if the government interest in disclosure outweighs the individual's privacy interest." *Fraternal Order of Police, Lodge 5 v. City of Philadelphia*, 812 F.2d 105, 110 (3d Cir. 1987). "The question of whether a federal constitutional right to privacy has been violated is a distinct question from whether a federal statutory right to privacy (*i.e.*, under FOIA) or a state common law right to privacy has been violated." *Scheetz v. The Morning Call, Inc.*, 946 F.2d 202, 206-07 (3d Cir. 1991) (citing *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749 n.13 (1989)).

Having reviewed the allegations in the complaint, the court concludes that Poulos has adequately stated a claim for violations of his constitutional right to privacy. While the defendants rely upon *Hurst v. State Farm Mutual Auto. Insur. Co.*, 2012 WL 426018 (D. Del. Feb. 9, 2012), to support their position, they fail to acknowledge that in *Hurst*, the constitutional claims were entwined with state claims and that the information at issue had previously been disseminated by Hurst. The court must liberally construe the allegations in the complaint. Poulos alleges that the defendants took intentional actions to disclose personal information and

that information was disseminated in violation of his constitutional rights. Count I states a cognizable claim. Therefore, the court will deny the motion to dismiss as to Count I.

### B. Count II, § 1983 Conspiracy (against McDerby, Brams, Donlon)

The defendants move for dismissal of Count II on the grounds that Poulos fails to state a conspiracy claim under 42 U.S.C. § 1985. Poulos, however, does not raise a § 1985 conspiracy claim. Rather, he raises a § 1983 claim of conspiracy.

To state a conspiracy claim under § 1983, Poulos must show that "persons acting under color of state law conspired to deprive him of a federally protected right." *Ridgewood Bd. of Educ. V.N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999). In addition, there must be evidence of actions taken in concert by defendants with the specific intent to violate that right. *Williams v. Fedor*, 69 F. Supp. 2d 649, 665-66 (M.D. Pa.), *aff'd*, 211 F.3d 1263 (3d Cir. 2000) (citing *Kerr v. Lyford*, 171 F.3d 330, 340 (5th Cir. 1999)).

Having reviewed Count II, the court finds that it states a cognizable claim. Therefore, the court will deny the motion to dismiss as to Count II.

### C. Count III, § 1983 Municipal Liability (policies, customs, and practices) (against the City of New Castle)

The defendants move for dismissal of Count III on the grounds that Poulos alleges a lack of appropriate policies, but fails to allege proof of more than a single incident as is required to state a municipal liability claim when there are not appropriate policies. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell* when the municipal actor does not have policymaking authority.).

7

A municipality may only be held liable under § 1983 when the "execution of a government's policy or custom . . . inflicts the injury." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). While a government policy is established by a "decisionmaker possessing final authority," a custom arises from a "course of conduct. . . so permanent and well settled as to virtually constitute law." *Andrews*, 895 F.2d at 1480 (citing *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978)). Accordingly, a plaintiff seeking to recover from a municipality must (1) identify an allegedly unconstitutional policy or custom, (2) demonstrate that the municipality, through its deliberate and culpable conduct, was the "moving force" behind the injury alleged; and (3) demonstrate a direct causal link between the municipal action and the alleged deprivation of federal rights. *Board of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

Contrary to the defendants' position, the complaint does not allege the absence of policies. The complaint alleges the City had policies that allowed the NCCPD to maintain and release its own personnel files and human resource related documents in a manner that violated the City's own regulations as well as state and federal law. Moreover, the defendants' position is flawed in that even if the complaint could be construed as alleging a lack of policies, Poulos may nevertheless establish a claim if "proof of the [single] incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *See Tuttle*, 471 U.S. at 823-24.

Having reviewed Count III, the court finds that it states a cognizable claim. Therefore, the court will deny the motion to dismiss as to Count III.

### D. State Claims

#### 1. Count IV, Defamation (against Donlon)

The defendants move for dismissal of Count IV on the grounds that the complaint "lacks support" for a defamation claim. The defendants argue that the complaint not only illustrates that Poulos' reputation in the community is unaffected, but also that no injury occurred, given that Poulos' federal position was eliminated due to reduction in force.

Defamation is defined as "that which tends to injure 'reputation' in the popular sense; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held." *Spence v. Funk*, 396 A.2d 967, 969 (Del. 1978). To establish a claim for defamation Plaintiff must establish: (1) the defamatory character of the communication; (2) publication; (3) that the communication refers to the plaintiff; (4) the third party's understanding of the communication's defamatory character; and (5) injury. *See Read v. Carpenter*, 1995 WL 945544, at *2 (Del. Super. Ct. June 8, 1995).

Poulos responds that "no greater injury can occur to a law enforcement officer than to be falsely accused of numerous administrative offenses and that Donlon provided false information knowing that plaintiff was not charged with any administrative offense and that the investigation was closed with a disposition of "not sustained." As it now stands, Count IV fails to state a claim for defamation. Poulos, however, includes new facts in his opposition to the motion to dismiss that set forth the injury he sustained as a result of the alleged defamation - he was not afforded a transfer to another local federal agency when others were, and it was questioned why he remained employed in federal service.

9

Accordingly, the court will grant the defendants' motion to dismiss Count IV, but will give Poulos leave to amend the count.

### 2. Counts V and VI, Invasion of Privacy (against McDerby, Brams, Donlon)

The defendants move to dismiss the invasion of privacy claims found in Counts V and VI on the grounds that the defendants did not publicize private and confidential information to the public at large and Poulos cannot establish that the defendants physically intruded upon a private place or Poulos' private affairs.

Under Delaware law, the tort of invasion of privacy includes four varieties of the tort: (1) intrusion on plaintiff's physical solitude; (2) publication of private matters violating the ordinary senses; (3) putting plaintiff in a false position in the public eye; and (4) appropriation of some element of plaintiff's personality for commercial use. *Barbieri v. News-Journal Co.*, 189 A.2d 773, 774 (Del. 1963). *See also Avallone v. Wilmington Med. Ctr., Inc.*, 553 F. Supp. 931, 938-39 (D. Del. 1982).

Count V invokes the second variety of the tort of invasion of privacy, involving unwanted publicity. Restatement (Second) of Torts § 652D describes the tort as "[o]ne who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public. *Barker v. Huang*, 610 A.2d 1341, 1350 (Del. 1992). The defendants argue that dismissal of Count V is appropriate because the information at issue was not publicly disclosed. Conversely, Poulos argues that, because the

10

information was distributed to management officials of two federal departments, this qualifies as public communication.

The Delaware Superior Court adopted the definition of publicity as set forth in a comment in the Restatement (Second) Torts § 652A, as follows: "'Publicity' . . . means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. It is . . . a communication that reaches, or is sure to reach, the public. Thus it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons." *Martin v. Baehler*, 1993 WL 258843, at*2 (Del. Super. Ct. May 20, 1993). The tort is directed towards public communication, not private communication. *See id.*

Here, it is alleged that the defendants communicated the information to one individual who then disseminated the information others. There are no allegations that the defendants disseminated the information as a public communication or that they knew the information would be disseminated to a group of people. Rather, the allegations are that the defendants' communications were private. Thus, the communications do not fall within this variety of the tort of invasion of privacy, and, the court will grant the motion to dismiss Count V. The court finds amendment of Count V futile.

In Count VI Poulos alleges the first variety of the tort of invasion of privacy as denominated in the Restatement - intrusion upon seclusion. The elements of the tort of intrusion upon seclusion include an intrusion into one's private affairs and a finding that such intrusion would be highly offensive to a reasonable person when the focus is on the intrusion. The tort is

described as "one who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Jackson v. Walgreens Corp.*, 2013 WL 2145938, at *4 (Del. Super. Ct. May 15, 2013). The Delaware Superior Court explains that "[t]he defendant is subject to liability . . . only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs." *Id.* "Thus, the sine qua non of this variety of the tort of invasion of privacy is clearly intrusion." *Barker*, 610 A.2d at 1350. Intrusion is defined as entering without invitation or welcome. *Fanean v. Rite Aid Corp. of Del., Inc.*, 984 A.2d 812, 821 (Del. Super. Ct. 2009).

The defendants argue that Poulos' notice of his letter of intent to sue "ultimately invited an investigation" into Poulos' personal affairs as well as information that is available to the public at large. The allegations are that once defendants were placed on notice of Poulos' intent to sue, they began to research and investigate Poulos, used their status as police officers to request criminal investigative files from the USACIC, and contacted Poulos' former co-workers and former roommate. The court cannot say that the notice of intent to sue contemplates that it is reasonable to expect potential defendants would use their official positions to conduct an investigation and to request files from a federal agency. Liberally construing Count VI, as the court must, the court finds that Count VI states an invasion of privacy claim of intrusion upon seclusion. Therefore, the court will deny the defendants' motion to dismiss Count VI for failure to state a clam upon which relief may be granted.

### 3. Count VII, False Light (against McDerby)

The defendants move to dismiss Count VII on the grounds that there is "no indication" that Poulos was held in a false light and there is no evidence of injury. The tort of false light invasion of privacy is defined in the Restatement (Second) of Torts § 652E as the tort of giving publicity to something that places the plaintiff in a false light before the public, the false light being highly offensive to a reasonable person, and knowing of or acting "in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Wyshock v. Malekzadeh*, 1992 WL 148002, at *2 (Del. Super. Ct. June 10, 1992).

Count VII fails to state a claim for the same reasons as Count V. There are no allegations that the defendants publically disseminated the information that allegedly placed Poulos in a false light. Again, the allegations are that the defendants' communications were private. Thus, the court will grant the defendants' motion to dismiss Count VII. The court finds amendment of Count VII futile.

### E. Immunity

In the alternative, the defendants move for dismissal on the bases that they have qualified immunity and have immunity under the County and Municipality Tort Claims Act.

#### 1. Qualified Immunity

The defendants contend that even if they violated Poulos' constitutional rights, they acted reasonably in light of the situation and, therefore, are shielded from civil liability. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation

13

and quotation marks omitted). The question of "whether an officer made a reasonable mistake of law and is thus entitled to qualified immunity is a question of law that is properly answered by the court, not a jury." *Curley v. Klem*, 499 F.3d 199, 211 (3d Cir. 2007). "[I]t is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009) (unpublished). A full analysis of whether qualified immunity applies to Poulos' claims against the defendant would be premature because there are unresolved questions of fact relevant to the analysis.

Therefore, the court will deny the motion to dismiss on the grounds of qualified immunity at this stage of the litigation, without prejudice to the defendants' ability to later raise the defense.

### 2. County and Municipality Tort Claims Act

The individual defendants move for dismissal of the State claims on the grounds that the defendants are immune from suit under Delaware's County and Municipality Tort Claims Act ("Tort Claims Act"), 10 Del. C. § 4010 *et seq.*, as to Counts IV, V, VI, and VII.

The Tort Claims Act provides that "except as otherwise expressly provided by statute, all governmental entities and their employees shall be immune from suit on any and all tort claims seeking recovery of damages." 10 Del. C. § 4011(a). It further provides for immunity in the performance or failure to exercise or perform a discretionary function or duty, whether or not the discretion be abused and whether or not the statute, charter, ordinance, order, resolution, regulation or resolve under which the discretionary function or duty is performed is valid or invalid. *Id.* at § 4011(b)(3). The Tort Claims Act provides, however, that an employee may be

14

personally liable for acts and omissions causing property damage, bodily injury or death in instance in which the governmental entity is immune under this section, but only for those acts which were not within the scope of employment or which were performed with wanton negligence or willful and malicious intent. *Id.* at § 4011(c).

As previously discussed, the court will dismiss Count IV for failure to state a claim upon which relief may be granted, but is giving Poulos leave to amend that count. Therefore, the court will deny without prejudice to renew that portion of the motion to dismiss that seeks dismissal of Count IV under the Tort Claims Act. The court sees no need to address immunity of the defendants pursuant to the Tort Claims Act as to Counts V and VII given that the allegations fails to state a claim upon which relief may be granted and amendment is futile.

As to Count VI, the invasion of privacy claim of intrusion upon seclusion, the defendants argue that it must be dismissed on the grounds that the complaint fails to allege property damage, bodily injury, or death and therefore, does not fall within any exceptions to immunity under § 4012(c) of the Tort Claims Act. With regard to any actions taken by the defendants in the performance of their official functions, they are immune from suit. *See id.* at § 4011(b)(3); *Collins v. Figueira*, 2006 WL 1817092 (Del. Super. Ct. June 23, 2006) (Police Department immune from suit under the Tort Claims Act for claims that it was negligence because it failed to ensure that patrolmen complied with the department's procedures and fundamental guarantees of the U.S. Constitution).

The complaint seeks damages for garden variety emotional distress, humiliation, embarrassment, and injury to reputation. Harm to reputation constitutes economic loss, not injury to person or property. *See, e.g., Ferki v. Wells Fargo Bank, N.A.*, 2010 WL 5174406, at

15

*10 (E.D. Pa. Dec. 20, 2010) (damage to professional reputation does not constitute injury to person or property); *Valley Forge Convention & Visitors Bureau v. Visitor's Servs., Inc.*, 28 F. Supp. 2d 947, 951 (E.D. Pa. 1998) (citing cases holding that loss of good will or reputation constitutes economic loss, not damage to person or property). Economic harm alone does not constitute "property damage" as that term is used in the Tort Claims Act. *See Dale v. Town of Elsmere*, 702 A.2d 1219, 1223 (Del. 1997). Because the complaint does not allege that Poulos suffered property damage, bodily injury or death, the defendants cannot be liable in their individual capacities pursuant to 10 Del. C. § 4011(c). *See Davis v. Town of Georgetown*, 2001 WL 985098, at *9 (Del. Super. Ct. Aug. 22, 2001).

Even assuming the claims in Count VI are meritorious, the claims are barred due to the defendants' immunity. Therefore, the court will grant the motion to dismiss Count VII as the defendants are immune from suit. The court finds that amendment is futile as to Count VII.

### F. Punitive Damages

The defendants move for dismissal of Poulos' claims that seek punitive damages from the individual defendants in their official and individual capacities. Poulos responds that the individual defendants are sued in the individual capacities, not their official capacities. Hence, that portion of the defendants' motion to dismiss is moot.

With regard to punitive damages against the individual defendants in their individual capacities, the defendants argue that the complaint does not set forth facts to establish facts that punitive damages are warranted. For the purposes of a motion to dismiss, Poulos has adequately pled facts which, if proven, could support an award for punitive damages. The motion to dismiss

16

the claim is premature. *See Kane v. Chester Cnty. Dep't of Children, Youth, and Families*, 10 F. Supp. 3d 671, 694 (E.D. Pa. 2014).

Therefore, the court will deny the motion to dismiss to the extent that the defendants seek to dismiss the claims for punitive damages raised against them in their individual capacities.

**IV.     CONCLUSION**

For the reasons discussed, the court will deny in part and grant in part the defendants' motion dismiss. (D.I. 7) The motion to dismiss will be denied as to Counts I, II, and III, and as to dismissal of the claims for punitive damages raised against the defendants in their individual capacities. The motion to dismiss will be granted as to Counts IV, V, VI, and VII. The plaintiff will be given leave to amend Count IV. The court finds futility of amendment as to Counts V, VI, and VII.

An appropriate order will be issued.

UNITED STATES DISTRICT JUDGE

_____, 2014
Wilmington, Delaware

17